Good morning, your honors. May it please the court, counsel. My name is Cori Endo. I'm here on behalf of Mr. Larson. Daniel Larson stands convicted of two crimes, first-degree murder and second-degree murder, both for his role in the death of Anastasia King. These two convictions for one offense violate the Double Jeopardy Clause. The clause provides three distinct protections. The first, the right to be free from a second prosecution upon the finding of innocence, is simply not applicable here. The second, the right to be free from a second prosecution upon a finding of guilt, is the right that Mr. Larson waived when he gave up his right to object to the filing of any additional charges. The third, the right to be free from multiple punishments for the same offense, is what is violated by the two convictions for the one offense. Mr. Larson never waived his right to be free from multiple punishments. The terms of the waiver applies only to the filing of charges. There's nothing in the literal terms of that plea agreement that would extend the waiver to the imposition of multiple punishments. There's no blanket waiver of double jeopardy rights. I'm somewhat at a loss about Respondent's argument that this plea agreement does extend to multiple punishments aspect of double jeopardy. I'd be happy to entertain. Well, wasn't there a, what was the exact language of the clause? The defendant waives any objection to the filing of additional or greater charges based on pre-charging or pre-trial delay, statutes of limitations, mandatory joinder requirements, or double jeopardy. So your argument is it's just limited, it should only have been read to, the state court should have only read it to mean limiting it to the filing. That's right. And in fairness to the state court, I don't think they ever considered whether it actually applied to the separate protection offered by double jeopardy. They, in their first opinion that was taken on the interlocutory appeal, really were only considering whether the state could refile those charges and proceed on the first degree murder. So let me ask you, do you contend, is your argument that this was an unreasonable application of clearly established Federal law and if so, which Supreme Court case are you relying upon? Or second, is the argument that it's an unreasonable determination of the facts? I think it's an unreasonable application of Supreme Court law, and that law being Ball v. United States, which clearly holds that a person cannot be punished two times for one offense, regardless of whether or not the sentence is increased as a result of that. Does it, does it, your argument, as I understand your argument, is that what should have happened here is the state court should have vacated? The second degree murder. The second degree murder conviction. Absolutely. Now, where does it say that in any Supreme Court case? In Ball, that's exactly what it says. There, the court recognized that it was okay for the prosecution, for the government to charge a person with possession and receipt of a firearm, and that they could proceed upon those two charges, but that they could not impose the two convictions. And so you can only impose the one conviction. Here, it's the terms of the plea agreement that require that. Are you talking about conviction or sentence? Convictions, Your Honor. All right. So your argument is that the two convictions amount to a punishment, just the convictions themselves fall within the scope of punishment. Yes. Is that right? That is what Ball says. What? The court says. What relief are you asking for? That the court grant the writ. And what do we tell the state court to do? Well, the typical remedy for a double jeopardy violation is for the court, the trial court to, at its election, to vacate one of the convictions. I think that's probably the most appropriate remedy here. Of course, you know, if the court would like to direct the state court to vacate the first degree murder conviction, that would certainly be Mr. Larson's preference. But I think the real answer, the correct answer, is that the court should direct the trial court to vacate one of those two convictions, that the two convictions cannot stand. In your brief, you also asked that he be resentenced. Why? I think that would be more of a technical resentencing, and it would depend upon which conviction the trial court vacated. I'm sure they would probably elect to vacate the second degree if they were given that choice. I think you're probably right, Your Honor, in which case the sentencing result would be the same. And we acknowledge that. The double jeopardy violation itself, though, doesn't turn upon whether the sentence would be affected when the one conviction, when one of the convictions is vacated. I think unless the Court has any other questions about the scope of the waiver, I'd like to turn to the question of whether Mr. Larson's in custody and whether there's any remedy available to him. I think the premise of the argument that he's not in custody is, first of all, wrong. He is challenging his first degree murder conviction. It's not based solely upon the second degree conviction that his claim is based. In fact, the habeas petition lists the first degree conviction in that sentence as the one that is being challenged in the habeas petition. But the typical remedy, as I mentioned, is to order the trial court to vacate one of the convictions. That the state court might choose to vacate the second degree murder conviction, which would have no effect on his sentence, does not mean that he's not in custody for purposes of 2254. Rather, a habeas claim just has to be capable of a result that would release the person. It doesn't have to be a certainty. It just has to be a possibility. And here there's certainly that possibility. As Your Honor recognized, it's probably an unlikely possibility. The court, you know, would probably vacate the second degree murder conviction. But it would have the ability to vacate that first degree murder conviction, which would have an effect of 12 years off of Mr. Larson's sentence. He's now serving a 384-month sentence, whereas sentence on the second degree murder conviction is just 240 months. A big difference for Mr. Larson. How do you understand the state's argument when they talk about the sentences merged? What do they mean by that? Well, I think when we use merge to talk about sentences, it's actually a merge in the non-technical sense. At least as I understand it. You mean there's only one sentence? The merger doctrine, there are two sentences that are running concurrently. The merger doctrine, as I understand it, applies to convictions. It's a doctrine that comes into play at the time of sentencing. But what the state court decisions talk about is whether convictions merge at the time of sentencing. It's a doctrine that applies to determine whether the legislature intended for multiple punishments. Here, where there are just two degrees of the same offense, it's clear that the legislature did not intend for there to be multiple punishments for those two crimes. The state's never taken the position that they possibly did in these circumstances. So in terms of sentences merging, I think it's a confusion that probably derives from the trial court's language when that judge was talking about sentences being concurrent and merging and convictions merging with sentences. The language there was very confusing, and I think it's kind of permeated the case throughout. So you would understand that the sentences are just concurrent? Yes, and that the merger doctrine does not apply. It really doesn't apply here. Correct. Unless the court has any other questions, I'd reserve the rest of my time. That's fine. Thank you. Why didn't the state just vacate that conviction? It saved a lot of time and effort for everybody. It could have, Your Honor, but Mr. Larson is not in custody under his second-degree murder conviction. So where is he? I mean, I don't understand that argument at all. Your Honor, I can get to that. However, Mr. Larson is not currently serving a second-degree murder conviction. Well, then why don't we just vacate the sentence and the conviction? Your Honor, Mr. Larson arguably could have brought a motion under the 2001 cause number. He could all go home. He could just stipulate to vacate it. He could all go home. He's still doing 364, 384 months? 384 months is the length of the sentence. And I would point out there's a big difference under Washington law between a first-degree murder sentence and a second-degree murder sentence for purposes of merger. It's not only lengthier. There's a mandatory minimum component for a first-degree murder conviction under Washington law. There would be a 20-year period when Mr. Larson is completely ineligible for any earned early release time or any furlough or anything like that. That's not true of second-degree murder conviction. So when we say that they merged, it was not just that they're running concurrently. That second-degree murder sentence was completely swallowed up by the first-degree murder sentence. The sentence was, but the conviction wasn't. That's correct, Your Honor. It doesn't make any sense to me. Well, at this point, it's just a docket entry. It's just a document that's arguably redundant. It has no impact at all on the length or the fact of Mr. Larson's current custody. Did I read somewhere he complains about the fact that it shows up on his rap sheet and now he gets some sort of less privileges in prison or something like that? I wasn't sure. I don't believe that that argument has ever been raised, and I don't believe that that's true. I believe he's in prison on a first-degree murder conviction. One unitary sentence of 384 months. Then the other sentence could be served if the first sentence was finished? I'm sorry, I didn't follow, Your Honor. If the sentence on the first offense was completed, can they pick him up again and then start the second sentence? No, Your Honor. If you're referring to the— There's no pardon, is there? No, there's not. The sentence that Mr. Larson has and will serve on his first-degree murder sentence is 384 months. The sentence he received on the second-degree murder conviction was 240 months. The 240 months has just been totally subsumed within the 384-month sentence. He's serving both sentences concurrently. I disagree, Your Honor. I think the sentence is merged completely. You're saying the service of the first sentence has an effect on the second, per se? I'm saying it has no effect at all, Your Honor. It's not the basis for Mr. Larson's custody. It's not going to prolong the 384-month sentence. It would be 384 months whether the second-degree murder conviction had ever been entered or not. Let me ask you, what's the advantage to the state to having the second-degree conviction on the record? I don't know that there's an advantage, Your Honor. The deal that Mr. Larson struck with the prosecutors, I think it was sensed early on in the process that he was kind of an impulsive type, and there needed to be something akin to an interorum clause in his plea agreement with the state to ensure that he, once he pled, received the benefits of the plea agreement, that he didn't try to back out of it. Well, as we know, that's exactly what he did as soon as he was convicted. So the benefit to the state is being able to enforce plea agreements, the terms of the plea agreements according to their very terms. Well, you did. You charged him with a higher, you were able to reinstate the first-degree murder charges. You obtained a conviction for that. I mean, that's a pretty strong signal to defendants who negotiate plea agreements and don't abide by them. Correct. Your Honor, I disagree that this is in any way having any effect on the length or the fact of Mr. Larson's presence in the Washington State Department of Corrections. And as the Court knows, the writ of habeas corpus can act only on custody. And I think the Court pointed that out in the questions to a counsel about what would the writ look like. Is this going to be a writ directing the state court to clean up its docket, to correct an error in a state court pleading or a ledger entry of some sort? That's exactly what the writ would have to look like. And that is beyond the reach of the habeas corpus authority that this Court has. I would point out that the- I still don't understand why the state is so insistent on having this on his record. Your Honor- When they got a first-degree murder, when they obtained a first-degree murder conviction. Correct. Mr. Larson made an agreement with the state. That's the whole- And- That's it. That's it, Your Honor. He made an agreement with the state. The state sought specific performance when he breached his plea agreement. And this is the specific performance. The plea agreement called for the state being able to file additional or greater charges. So that contemplated the fact that he would not necessarily have his second-degree murder conviction- But that plea agreement, though, didn't contemplate multiple punishments, did it? Well, I would agree, Your Honor, that that is not included expressly among the terms in the plea agreement. But it- It talks about refiling the charges. Filing additional or greater charges. Right. While at the same time saying nothing about- And you read the whole clause together. But it doesn't say anything about expunging or vacating earlier charges. Well, it doesn't say anything about multiple punishments either. It does say double jeopardy. It extends to. And I think this is as blanket a waiver as could be asked for. I know we know from Supreme Court precedent the clearly established federal law that operates in this case, Ricketts v. Adamson, that a defendant may waive his double jeopardy rights even in a document that says nothing about double jeopardy. It doesn't include that phrase. And here we have that express phrase in Mr. Larson's plea agreement. And there was that prefatory language. And in Ricketts, you know, the state, every state that was involved there, they vacated, they vacated the sentence. Yes, Your Honor. The conviction. And that's because the plea agreement called for that very result. The plea agreement said if the defendant breaches, this agreement is null and void, status quo ante will be restored, and we will proceed from that point. So the plea agreement in that case called for that result. There's no such language, no comparable language in Mr. Larson's plea agreement. And there was no double punishment. The second-degree murder conviction was not counted in calculating the sentence for the first-degree murder, nor was the second-degree murder conviction offered in evidence at the trial. He received two punishments, correct? He did not receive two punishments. There are two convictions. He was sentenced on one and sentenced on the other. They're run concurrently. And then you try to explain it by saying, well, no, all this just merges in the end. But there are actually two different convictions and two different sentences. That's correct, Your Honor. Under Ball v. United States, the Supreme Court decided that a conviction can constitute a punishment. And they pointed to a number of different things, that the delay in the eligibility for parole, the possibility that can result in an increased sentence under a recidivist sentencing statute that can be used to impeach the defendant, or that it carries a societal stigma. First of all, I'd argue that none of those constitutes custody for purposes of Section 2254A, for jurisdictional purposes for this case. Ball was a direct appeal case where the Supreme Court, acting in its supervisory capacity over the federal district courts, remanded to the district court to set aside one of the counts in a judgment and sentence. That's not what's going on in this case. This is not a case on direct appeal. This is a case on habeas corpus review. And as we know from Supreme Court precedent, the writ acts only on custody, and the prisoner's judgment is not subject to review in habeas corpus.  He has a determinate sentence of 384 months. His sentence, due to the fact that the judge merged the two sentences, ensures that the second-degree murder count will not count in any future sentencing in the event that he gets released from prison and goes out and commits a future crime. And the adverse... Is there a state statute that talks about merger? This is all based on state law? Yes, it is, Your Honor. Is there a state case that talks about merger, what that means? There are cases. Unfortunately, I don't have any off the top of my head, any available for the court. I can provide those. So is it the sentence? From your perspective, it's the sentences that merge together? They're not concurrent? There's just really only one sentence? There's one sentence, Your Honor. It's one unitary sentence, merged sentence. The greater swallowed up the lesser. I don't know which way we'll want to look at it, but that's really the net effect of what the trial court did here, was indicate that the first-degree murder sentence was what Mr. Larson is going to be serving. Could the governor enter a pardon on one count and not on the other? Could the governor issue a commutation of some sort on Mr. Larson's behalf? Certainly. The governor could issue a pardon, a sentence commutation. Judge Beezer's question was on one or the other. I believe so. I believe our governor's authority is not limited in any sense. He would continue to serve time on the one not forgiven, right? That's correct. If, for example, Mr. Larson filed an application for clemency with Washington's governor, the governor could, in her discretion, say, I think you should have that first-degree murder conviction. I agree with you that that second-degree murder conviction shouldn't be there, and I'm going to direct that that be set aside. It would have no effect at all on Mr. Larson's sentence. He would continue to be in prison for 384 months. That's the sentence that governs his current custody. And I would point out further, under Ball v. United States, that collateral consequences such as impeachment, the possibility of impeachment and societal stigma, are also not custody for purposes of Section 2254. Now, interestingly, Mr. Larson complains about the state courts not deciding his case on a double punishment theory. That was probably because he never presented such an argument to the state courts at any time. His Court of Appeals pro se brief, that's Excerpt of Record 108, just talked about or complained about the trial, being tried on first-degree murder, was unlawful because he had never waived double jeopardy. It was the same in his Washington Supreme Court petition for review. He said double jeopardy cannot and has not been waived. That's Excerpt of Record 93-94. And then when he filed his federal petition, his theory was, I at no time said that I waived my protection against double jeopardy. Well, we know that that's not true. We know that he did make a waiver. He indicated that he had not waived it, but in fact the record shows that he had. He never presented a theory of double punishment. And the state courts can't be faulted for failing to apply or failing to adhere to Ball v. United States when Mr. Larson never saw fit to present that to the state courts. He never argued anything under Ball v. United States. He just made a generic double jeopardy argument that being put on trial a second time or being subjected to a conviction a second time was a violation of double jeopardy. Mr. Larson's claim is not cognizable, and he's not entitled to release from his first-degree murder sentence because the second-degree murder conviction is essentially meaningless now. It's just a docket entry, and he suffers no present restraint from it, and it's not the source of Mr. Larson's custody. That's exactly why I don't understand. If it's meaningless, why doesn't the state just get rid of it? Your Honor, to the best of my knowledge. I'm sorry. I keep coming back to that. I understand, Your Honor. None of this makes real sense. And that's fine. But I don't think Mr. Larson Let me ask you this. Is there a procedure under Washington law where today he could go back to the Superior Court and ask them to vacate that sentence, that conviction? I was just getting to that point. To the best of my knowledge, Mr. Larson has never pursued anything under Superior Court Criminal Rule 7.8b. There's not a guarantee that this would result in setting aside the second-degree murder conviction. A judge could just as easily say, Well, you're not suffering any restraint from this conviction, so why should I even take any action on this? But double jeopardy is one of the exceptions to the one-year statute of limitations for state post-conviction relief actions. So arguably at least he has a basis for pursuing that. He has not to this point, and it is under a separate cause number. This case, the first-degree murder conviction was tried under a 2005 cause number. The second-degree murder conviction was pursued under a 2001 cause number. So that cause, technically speaking, was not before the trial court or the Washington courts when the case was on appeal. To the best of my knowledge, though, Mr. Larson never pursued such an action in the Superior Court. Okay. Your time is up. Thank you, Your Honor. Thank you. First, I'd like to just note that the Respondent has agreed that the plea by its express terms does not extend to the multiple punishment protection. As this Court is well aware, the Court looks at the literal terms when interpreting what a plea agreement means. And so I think there should be no question that the scope of the waiver does not extend to the multiple punishment protection. Has it been multiply punished? The next point I'd like to get to is, the Supreme Court has said the second conviction is an impermissible punishment. That's Ball 470 U.S. at 864 to 865, regardless of whether or not there is any effect on the sentence. And what the District Court said is, the Court cannot predict the ways in which Washington law might change or the forum in which Petitioner might, if he does, someday reoffend. We have no idea what effect these two convictions might have on Mr. Larson in the future, but the Supreme Court has made it clear that it's the fact of the two convictions that violates the double jeopardy clause. The next point I'd like to turn to is the question of whether or not Mr. Larson has exhausted this claim in state court. Respondents quoted some of the language from the briefing. At ER 108, however, Mr. Larson, if I may, all of these proceedings were done pro se, and he consistently raised the question of the multiple punishment aspect of the double jeopardy claim. At times he was focused much more so on the prosecution than the punishment, but in every pleading he has raised the double punishment point. At ER 108, to the Washington Court of Appeals, he wrote, plus a person cannot be convicted of two murders for one death. That's exactly what my point is here today and exactly the relief that, or the violation that he's seeking relief from. In the Washington Supreme Court, at ER 93, he wrote, Larson now stands convicted of murder in the first degree and murder in the second degree for the same death. This is not right and is a violation of the Fifth Amendment to the United States Constitution. In his habeas petition, again, he wrote that he was found guilty for killing one person twice. The district court recognized the double punishment aspect of the claim and ruled on it. So I think there should be no question that he both exhausted it in the state courts and presented it to the district court. And finally, as to the custody question, I'm still not understanding why, what basis there is to say that the only relief he could get is relief from the second degree murder conviction. It is the fact that the two convictions, the first degree murder conviction and the second degree murder conviction, that violate his right to be free from double jeopardy. There's nothing in the case law, there's nothing in the statute, there's nothing in AEDPA that would limit this court's authority to grant relief only on the second degree murder conviction. The writ, as I stated earlier, or the direction to the state court would be to vacate one of the convictions. The court does not need to direct the trial court which of those convictions should be vacated. And therefore, some real relief is possible for Mr. Larson. So you're saying that if we just say vacate one of the convictions, he has a possibility of the state court throwing out the first degree murder conviction? Certainly, Your Honor. It might be a long shot, but it's a hope that he has, and one that's not foreclosed by either the case law or the statute. So why doesn't he just go back to the superior court, if double jeopardy is an exception to the one-year time bar? Your Honor, Mr. Larson has proceeded pro se through all of these proceedings. I'm not sure he's even aware of the realm of possibilities. I think, though, that there is a double jeopardy violation that's before this court now, and that the court has the authority to remedy. And we would ask the court to do just that. All right. Thank you, Your Honor. Thank you. The arguments on the matter will be submitted at this time.
judges: Collins, Beezer, Paez